IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| JAMIL ABDULLAH AL-AMIN, | : | HABEAS CORPUS |
| BOP ID 99974-555, | : | 28 U.S.C. § 2254 |
|     Petitioner, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. |
| | : | 1:12-CV-1688-AT-GGB |
| DAVID EBBART, Warden, and | : | |
| HOMER BRYSON, | : | |
| Commissioner, | : | |
|     Respondents. | : | |

# ORDER

In his Fourth Amended Petition for Writ of Habeas Corpus (Doc. 129), petitioner Jamil Abdullah Al-Amin has raised through counsel what he acknowledges to be "a new *Brady* [*v. Maryland*, 373 U.S. 83 (1963),] claim." (Doc. 133 at 30). Mr. Al-Amin states that this new *Brady* claim is "based on three documents produced for the first time after the conclusion of his trial, direct appeal, and state habeas action," which he describes as follows:

> (1) a Declaration of a U.S. Marshal dated June 26, 2012, which states that "[s]everal other individuals charged in [Mr. Al-Amin's criminal] case remain at large" [Dkt. 116-1, at 3]; (2) a BOLO ("be on the lookout") bulletin issued to "ALL LAW ENFORCEMENT AGENCIES" on March 17, 2000 (the day after the crimes), which describes the height and weight of the shooter as "5' 6" - 5' 8", 150-160 LBS." [Dkt. 117-1, at 10]; and (3) handwritten notes of an interview with Sergeant Paul Rogers, the member of the

> Alabama dog tracking team who found the .9 mm Browning pistol used in the crimes, which states that Sergeant Rogers felt the pistol was "placed" [Dkt. 117-3, at 3].

(*Id.*).

Respondent Homer Bryson, through counsel, states that he "does not waive exhaustion in this case," but rather contends that Mr. Al-Amin's new *Brady* claim should be considered "procedurally defaulted under Georgia's successive petition rule." (Doc. 130 at 8). In support, Mr. Bryson suggests that documents (2) and (3) were not withheld from Mr. Al-Amin's trial counsel and thus cannot be considered to have been unavailable earlier. *See* (Doc. 131 at 47-48).

In reply, Mr. Al-Amin's habeas counsel denies that his trial counsel received or reviewed either document (2) or (3) prior to trial and contends that an evidentiary hearing must be held to resolve this dispute. *See* (Doc. 133 at 36-40).

For the following reasons, I conclude that Mr. Al-Amin may still have available remedies in state court with respect to his new and unexhausted *Brady* claim, and I further conclude that the appropriate next step is to permit Mr. Al-Amin the "short period of time (seven days)" that he requests "either to move for a stay-and-abeyance under *Rhines* [*v. Weber*, 544 U.S. 269 (2005)], or to dismiss his *Brady* claim" from his Fourth Amended Petition. (Doc. 129 at 163).

2

It is ordinarily the case that "[a]n application for a [federal] writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State Court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1). It is further the case that "[a]n applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented." *Id.* at (c).

Georgia law provides:

> All grounds for relief claimed by a petitioner for a writ of habeas corpus shall be raised by a petitioner in his original or amended petition. Any grounds not so raised are waived unless the Constitution of the United States or of this state otherwise requires or *unless any judge to whom the petition is assigned, on considering a subsequent petition, finds grounds for relief asserted therein which could not reasonably have been raised in the original or amended petition.*

O.C.G.A. § 9-14-51 (emphasis added).

Mr. Bryson argues that if Mr. Al-Amin sought to raise his new *Brady* claim based on documents (1), (2), and (3) in state court now, he would be barred from doing so because his claim "would clearly be deemed successive under O.C.G.A.

3

§ 9-14-51" (Doc. 131 at 37).  Other than to suggest, that documents (2) and (3) were provided to Mr. Al-Amin's trial counsel earlier, Mr. Bryson does not elaborate on his reasons for contending that Mr. Al-Amin's new *Brady* claim could reasonably have been raised earlier.  Indeed, Mr. Bryson concedes that "clearly, [document (1)], prepared in June 2012 . . . , did not exist at the time Petitioner was litigating his state collateral attack," and he further implicitly concedes that the record is unclear and ambiguous as to whether Mr. Al-Amin's trial counsel had access to documents (2) and (3).  (Doc. 131 at 38 & 47-48).

The Georgia Supreme Court has noted, in a parenthetical, that O.C.G.A. § 9-14-51 is a "bar against most successive habeas petitions." *Tolbert v. Toole*, 767 S.E.2d 24, 28 (Ga. 2014).  O.C.G.A. § 9-14-51 is not, however, a bar against all successive petitions.  Indeed, the Georgia Supreme Court has held that a claim alleged to have been discovered after the conclusion of a state habeas proceeding should not ordinarily be treated as being procedurally-barred if brought in a successive petition under O.C.G.A. § 9-14-51.  *See Gibson v. Head*, 646 S.E.2d 257, 260 (Ga. 2007).  Thus, as to at least document (1) and possibly also documents (2) and (3), it appears that a colorable argument under O.C.G.A. § 9-14-51 can be made that Mr. Al-Amin's new *Brady* claim "could not reasonably

4

have been raised" earlier and that there are still state remedies available to him if he files another state habeas petition.

The rule in this circuit that O.C.G.A. § 9-14-51 "can and should be enforced in federal habeas proceedings against claims never presented in state court" gives way by its own terms if "there is some indication that a state court judge would find the claims in question 'could not reasonably have been raised in the original or amended [state habeas petition].'" *Chambers v. Thompson*, 150 F.3d 1324, 1327 (11th Cir. 1998) (quoting O.C.G.A. § 9-14-51). This is a common-sense recognition that the Georgia statute itself allows successive petitions to be brought in limited and well-defined circumstances. For the reasons discussed above, there is sufficient "indication" in this case that a state court judge might find that Mr. Al-Amin's new *Brady* claim could not reasonably have been raised earlier and that he falls within the category of petitioners entitled under O.C.G.A. § 9-14-51 to file a successive habeas petition in state court.

I understand that part of Mr. Bryson's argument is that documents (2) and (3) were, in fact, available before trial to Mr. Al-Amin's counsel. I understand as well that Mr. Al-Amin disputes this. Neither party has pointed me to any conclusive indication in the record establishing that its position is correct, and Mr.

5

Al-Amin has suggested that an evidentiary hearing is required to settle the dispute.

If a state court judge agrees that document (1)–and possibly documents (2) and (3)–were not available to Mr. Al-Amin's trial counsel, then she might well conclude that Mr. Al-Amin may invoke the exception in O.C.G.A. § 9-14-51 and file a successive state habeas petition to pursue this new *Brady* claim.  To the extent that the parties now dispute whether documents (2) and (3) were actually available to Mr. Al-Amin's trial counsel, the state habeas court, rather than this Court, should hold any necessary evidentiary hearing, as its determination of that factual dispute may well be central to its determination whether O.C.G.A. § 9-14-51's exception applies to documents (2) and (3), as well as document (1).[1]

---

[1] This is consistent with the general principle that:

> Comity . . . dictates that when a prisoner alleges his continued confinement for a state court conviction violates federal law, the state courts should have the first opportunity to review this claim and provide any necessary relief [to] reduce[] friction between the state and federal court systems by avoiding the "unseemliness" of a federal district court's overturning a state court conviction without the state courts having had an opportunity to correct the constitutional violation in the first instance.

*O'Sullivan v. Boerckel*, 526 U.S. 838, 844-45 (1999) (internal citations omitted).

Accordingly, I **ORDER** Mr. Al-Amin either to (A) move for a stay-and-abeyance under *Rhines*, or (B) dismiss his *Brady* claim from his Fourth Amended Petition **WITHIN SEVEN (7) DAYS** of the entry date of this Order, consistent with his request to be given the opportunity to make that choice. *See* (Doc. 129 at 163) (Mr. Al-Amin's request).

**IT IS SO ORDERED**, this 17th day of December, 2015.

*Gerrilyn G. Brill*
GERRILYN G. BRILL
UNITED STATES MAGISTRATE JUDGE

---

Insofar as Mr. Al-Amin requests that this Court find an "exception" to the exhaustion requirement or pre-empt state court review of his new *Brady* claim by holding an evidentiary hearing itself, I find unpersuasive Mr. Al-Amin's citations to *Banks v. Dretke*, 540 U.S. 668 (2004), *Granberry v. Greer*, 481 U.S. 129 (1987), and *Frisbie v. Collins*, 342 U.S. 519 (1952). *See* (Doc. 129 at 136 &160-62). Each of those cases was decided under principles that applied *before* passage of the Antiterrorism and Effective Death Penalty Act of 1996, 110 Stat. 1214 ("AEDPA"). *See, e.g., Banks v. Dretke*, 540 U.S. 668, 687 n.9 (2004). AEDPA significantly altered and limited the circumstances in which "exceptions" to the exhaustion requirement apply, *see* 28 U.S.C. § 2254(b)(1)(B)(i)-(ii), and limited the circumstances in which evidentiary hearings may be held in habeas proceedings in federal court, *see id.* at (e)(2).