IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| JAMIL ABDULLAH AL-AMIN,<br><br>Petitioner,<br><br>v.<br><br>JOHN "J.T." SHARTLE, Warden, and HOMER BRYSON, Commissioner of the Georgia Department of Corrections,<br><br>Respondents. | CIVIL ACTION NO.<br>1:12-CV-1688-AT-GGB<br><br>HABEAS CORPUS<br>28 U.S.C. § 2254 |

**PETITIONER'S NOTICE OF INTERVENING AUTHORITY**

In advance of the oral argument in this action scheduled for November 18, 2016, Petitioner Jamil Abdullah Al-Amin respectfully notifies the Court and Respondent Homer Bryson of an intervening authority supporting his Objections to the Magistrate Judge's Report and Recommendation [Dkt. 143].

Patrick Mulvaney & Katherine Chamblee, *Innocence and Override*, 126 Yale L.J. F. 118 (2016) (copy attached as **Exhibit A**). This August 2016 article discusses empirical evidence supporting the connection between residual doubt and jurors' decisions not to impose a death sentence. *See esp. id.* at 119-20.  Mr. Al-Amin's trial counsel argued residual doubt during his sentencing phase closing

argument (Tr., 4334-57 [Dkt. 33-3, at 112-35]), and Mr. Al-Amin's Objections noted the possible relationship between residual doubt and the jury's decision not to impose the death penalty here. Objections, at 14 n.13 [Dkt. 143, at 21 n.13].

Respectfully submitted, November 17, 2016.

| | |
|---|---|
| KILPATRICK TOWNSEND<br>  & STOCKTON LLP<br>1100 Peachtree Street, Suite 2800<br>Atlanta, Georgia 30309-4528<br>Telephone: (404) 815-6500<br>Facsimile: (404) 815-6555 | s/ C. Allen Garrett Jr.<br>A. Stephens Clay (Ga. Bar 129400)<br>Miles J. Alexander (Ga. Bar 009000)<br>Ronald L. Raider (Ga. Bar 592192)<br>C. Allen Garrett Jr. (Ga. Bar 286335)<br>Joe P. Reynolds (Ga. Bar 358795) |

*Attorneys for Petitioner Jamil Abdullah Al-Amin*

## CERTIFICATE OF FONT AND POINT SELECTION

I hereby certify that the foregoing was prepared in Times New Roman font, 14 point type, in compliance with Local Rule 5.1(C).

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been filed with the U.S. District Court's CM/ECF System and that pursuant thereto, a copy of this pleading has been served upon the following persons by electronic mail:

>Paula K. Smith, Esq.
>psmith@law.ga.gov

>Lori M. Beranek
>Lori.Beranek@usdoj.gov

Dated: November 17, 2016.

KILPATRICK TOWNSEND
  & STOCKTON LLP
1100 Peachtree Street, Suite 2800
Atlanta, Georgia 30309-4528
Telephone: (404) 815-6500
Facsimile: (404) 815-6555

s/ C. Allen Garrett Jr.
C. Allen Garrett Jr.
Georgia Bar No. 286335
agarrett@kilpatricktownsend.com

*One of the Attorneys for Petitioner Jamil Abdullah Al-Amin*

# EXHIBIT

# A

**THE YALE LAW JOURNAL FORUM**
AUGUST 8, 2016

## Innocence and Override

*Patrick Mulvaney & Katherine Chamblee*

For the past three decades, the practice of judicial override in capital cases has allowed Alabama judges to impose the death penalty even where the jury voted for life. However, recent developments have cast doubt on the future of override in Alabama. The United States Supreme Court struck down part of Florida's capital sentencing scheme in January because "[t]he Sixth Amendment requires a jury, not a judge, to find each fact necessary to impose a sentence of death."[1] In response, the Florida legislature eliminated override in March,[2] and the Delaware Supreme Court invalidated its own state's override system on August 2,[3] leaving Alabama as the only state that still permits the practice.[4] Override in Alabama has been attacked on other grounds as well; in 2013, two Justices of the United States Supreme Court expressed Eighth Amendment concerns that Alabama overrides are arbitrary and linked to political pressure.[5]

---

1. *See* Hurst v. Florida, 136 S. Ct. 616 (2016).

2. *See* Act effective Mar. 7, 2016, 2016 Fla. Sess. Law Serv. ch. 2016-13 (H.B. 7101) (West).

3. *See* Rauf v. State, No. 1509009858 (Del. Aug. 2, 2016).

4. The United States Supreme Court has directed Alabama's appellate courts to evaluate the impact of *Hurst* on Alabama capital sentencing. *See, e.g.*, Order, Wimbley v. Alabama, No. 15-7939 (May 31, 2016); Order, Johnson v. Alabama, No. 15-7091 (May 2, 2016).

5. Woodward v. Alabama, 134 S. Ct. 405, 406-10 (2013) (Sotomayor, J., dissenting). We represented Mario Woodward, the petitioner, in his challenge to Alabama's override scheme. The Court declined to review the case, but Justice Sotomayor dissented from the denial, joined by Justice Breyer. Woodward, 134 S. Ct. at 406-10 (2013) (Sotomayor, J., dissenting). As a general principle, the Court considers "cruel and unusual" those punishments that have been rejected by most of the nation, but still linger in isolated states. *See* Coker v. Georgia, 433 U.S. 584, 592-99 (1977); Gregg v. Georgia, 428 U.S. 153, 179-82 (1976). In that vein, Justice Sotomayor noted in *Woodward* that there were twenty-seven death sentences imposed by override across the country between 2000 and 2013, twenty-six of which were in Alabama. *See Woodward*, 134 S. Ct. at 407 (Sotomayor, J., dissenting). The Eighth Amendment also bars sentencing procedures that create a "substantial risk" that a punishment will be carried out in an "arbitrary and capricious" manner. Gregg, 428 U.S. at 188-89 (discussing Furman v. Georgia, 408 U.S. 238, 313 (1972)). Under that rubric, Justice Sotomayor pointed out in *Woodward* that override sentences are often the result of political

INNOCENCE AND OVERRIDE

As attorneys who represent people on death row in Alabama, we encounter override frequently in our cases. This Essay makes an additional argument, informed by our practice, for why judicial override is unconstitutional: it increases the risk of wrongful executions. Why might death sentences imposed by override be less reliable than others? The reason is residual doubt. Jurors with lingering doubts about a defendant's guilt are less likely to vote for a death sentence. Accordingly, jury recommendations for life at times reflect an effort to safeguard against the execution of an innocent person. Because the Supreme Court's approval of state death penalty schemes hinges on reliability,[6] the problem of innocence in override cases renders the practice of override constitutionally impermissible.

## I. RESIDUAL DOUBT AND JURY VOTES FOR Life

At first blush, the idea of residual doubt may seem counterintuitive. By the time a capital defendant reaches sentencing, the jury has found him guilty *beyond a reasonable doubt*. What role could lingering doubts play in choosing between life and death?

As the Supreme Court has explained, the "beyond a reasonable doubt" standard does not require the elimination of *all* doubt. Instead, it represents an evidentiary threshold that leaves the jurors firmly convinced of guilt. "Residual doubt" refers to "a state of mind that exists somewhere between 'beyond a reasonable doubt' and 'absolute certainty.'"[7]

The reported experiences of capital jurors reveal that this space between reasonable doubt and no doubt at all plays a pivotal role in sentencing decisions. Researchers analyzing data from the Capital Jury Project, a multi-state effort that has surveyed thousands of capital jurors, found that residual doubt was the most significant reason jurors voted for life sentences.[8] As one

---

pressure rather than valid sentencing considerations. See *Woodward*, 134 S. Ct. at 408-09 (Sotomayor, J., dissenting).

6. *See Gregg*, 428 U.S. at 189.
7. Franklin v. Lynaugh, 487 U.S. 164, 188 (1988) (O'Connor, J., concurring).
8. *See* Stephen P. Garvey, *Aggravation and Mitigation in Capital Cases: What Do Jurors Think?*, 98 COLUM. L. REV. 1538, 1563 (1998) (explaining data showing that residual doubt is the most influential factor in jury votes for life); *see also* Susan D. Rozelle, *The Principled Executioner: Capital Juries' Bias and the Benefits of True Bifurcation*, 38 ARIZ. ST. L.J. 769, 775 (2006) (describing residual doubt as "the most potent mitigator in capital cases"); Scott E. Sundby, *The Death Penalty's Future: Charting the Crosscurrents of Declining Death Sentences and the McVeigh Factor*, 84 TEX. L. REV. 1929, 1939 (2006) (explaining that where it exists, residual doubt is a powerful factor in favor of life).

scholar concluded, "[T]he best thing a capital defendant can do to improve his chances of receiving a life sentence . . . is to raise doubt about his guilt."[9]

The fact that jurors are more likely to vote for life if they have lingering doubts about guilt has important implications for override. It suggests that override cases—in which a jury voted for life before a judge imposed a death sentence—are more likely to involve weaker evidence and wrongful convictions when compared to other death penalty cases. Not surprisingly, in Alabama, override cases account for less than a quarter of death sentences but half of death row exonerations.[10]

Our experiences and interactions with capital jurors in Alabama further illustrate the dangerous connection between residual doubt and override. For example, we spoke with a juror from the case of Larry Randal Padgett, who was sentenced to death by override in 1992. The juror said that although she was undecided at the guilt phase, she ultimately found Padgett guilty of capital murder. At the penalty phase, she voted for life "because of the doubt [she] had left" about whether Padgett had committed the crime.[11] Despite the jury's 9-3 vote for life, the judge imposed a death sentence. Padgett was exonerated five years later.[12]

A juror from the 2003 trial of Daniel Wade Moore gave us a similar account. He "was still unsure of [Moore's] guilt" at the penalty phase, so he

---

9. Garvey, *supra* note 8, at 1563. Of course, this does not mean residual doubt is easy to create or appropriate as a defense theory in all or most cases. *See* Scott E. Sundby, *The Capital Jury and Absolution: The Intersection of Trial Strategy, Remorse, and the Death Penalty*, 83 CORNELL L. REV. 1557, 1583 (1998) ("[I]t may very well be that lingering doubt about actual innocence is the 'strongest possible mitigating evidence,' but the cases included in this study suggest that creating such a lingering doubt is very difficult. In this light, the defense carefully and realistically should assess the likelihood that it can create doubt before pursuing a denial defense strategy.") (quoting Welsh S. White, *Effective Assistance of Counsel in Capital Cases: The Evolving Standard of Care*, 1993 U. ILL. L. REV. 323, 357 n.236 (1992)).

10. There were 413 death sentences imposed in Alabama from 1981, the year in which the override statute was passed, through 2015. *See Death Sentences in the United States From 1977 by State and by Year*, DEATH PENALTY INFO. CENTER, http://www.deathpenaltyinfo.org/death-sentences-united-states-1977-2008 [http://perma.cc/V4DV-CKF7]. Of those 413 sentences, 101 were overrides. *See Alabama Overrides from Life to Death*, EQUAL JUST. INITIATIVE (Dec. 16, 2013), http://www.eji.org/files/12-16-13%20Updated%20Override%20List_0.pdf [http://perma.cc/43RG-5C69]. In that same period, six people were exonerated from death row in Alabama due to innocence. *See Innocence: List of Those Freed From Death Row*, DEATH PENALTY INFO. CENTER, http://www.deathpenaltyinfo.org/innocence-list-those-freed-death-row [http://perma.cc/MD9G-TQFB]. Three of the six—Larry Randal Padgett, Daniel Wade Moore, and Walter McMillian—had been sentenced to death by override. *See Alabama Overrides from Life to Death*, *supra*.

11. Interview with Anonymous Padgett Juror by Katherine Chamblee (April 13, 2016) (on file with author).

12. *See generally* RICHARD S. JAFFE, QUEST FOR JUSTICE: DEFENDING THE DAMNED 195-229 (2012) (recounting Padgett's case).

joined seven other jurors in voting for a life sentence.[13] The case then went to the trial judge, who also had concerns about the conviction. As he explained in a televised interview: "I didn't think the State had proven it. Too many unanswered questions. It never got to the point of beyond a reasonable doubt."[14] Nevertheless, the judge overrode the jury and imposed a death sentence. "It didn't matter what I thought," he said. "The jury said that he did it."[15] Moore, like Padgett, was ultimately exonerated.[16]

Even when jurors believe that a particular defendant was involved in the offense at issue, they often have doubts about what role he played and whether he had the specific intent to kill, which is required for a capital murder conviction in Alabama.[17] At Shonelle Jackson's trial in 1998, questions arose as to whether the shots that killed the victim were fired by Jackson or one of his three co-defendants. The jury found Jackson guilty but voted 12-0 for life, in part because several jurors "had concerns about whether [Jackson] was responsible."[18] The judge imposed the death penalty anyway, and Jackson remains on death row today.

## II. THE CONSTITUTIONAL IMPLICATIONS OF INNOCENCE AND OVERRIDE

The Supreme Court has held that state death penalty schemes are constitutional under the Eighth and Fourteenth Amendments only if they provide adequate protections against unreliable death sentences.[19] Accordingly,

---

13. Interview with Anonymous Moore Juror by Katherine Chamblee (April 19, 2016) (on file with author).
14. *Lies and Whispers* at 5:14-31 (CBS television broadcast Feb. 20, 2010), http://www.cbsnews.com/news/48-hours-mystery-lies-and-whispers-20-02-2010 [http://perma.cc/X7DR-JF88] (featuring Judge Glenn Thompson's explanation of his imposition of a death sentence by override in Moore's case).
15. *Id.* at 5:38-41.
16. *See Daniel Wade Moore*, NAT'L REGISTRY OF EXONERATIONS (June 2012), http://www.law.umich.edu/special/exoneration/pages/casedetail.aspx?caseid=3488 [http://perma.cc/B5DV-YZ5X]. Walter McMillian suffered a similar fate. He was sentenced to death by override in 1988 and exonerated in 1993. *See generally* BRYAN STEVENSON, JUST MERCY: A STORY OF JUSTICE AND REDEMPTION (2015) (recounting the McMillian case).
17. ALA. CODE § 13A-5-40(b); ALA. CODE § 3A-6-2(a)(1).
18. Paige Williams, *Double Jeopardy*, THE NEW YORKER, Nov. 17, 2014, at 56.
19. *See* Beck v. Alabama, 447 U.S. 625, 637 (1980); Lockett v. Ohio, 438 U.S. 586, 605 (1978); Gregg v. Georgia, 428 U.S. 153, 195 (1976).

the Court has invalidated statutes that increase the risk that innocent people will be executed.[20]

In *Atkins v. Virginia*, the Court addressed the execution of defendants with intellectual disability.[21] It found that because such defendants are more likely to falsely confess and less able to provide meaningful assistance to their counsel, they "face a special risk of wrongful execution."[22] In other words, intellectual disability weakened certain safeguards that normally protect defendants against erroneous convictions. This supported a categorical rule exempting the intellectually disabled from the death penalty.[23]

The Court's reasoning in *Atkins* is equally applicable to override. Just as the risk of wrongful execution weighed against the death penalty for intellectually disabled defendants, it weighs against the death penalty by override.

The Court has already recognized that capital jurors consider residual doubt to be extremely important.[24] And if jurors tend to recommend life where the State's guilt phase case leaves lingering doubts, then override targets cases with weaker evidence. The result is less reliable death sentences—an outcome that creates a constitutional infirmity for override. The only remedy is to eliminate override altogether.

## CONCLUSION

In the early years of judicial override, several Supreme Court Justices expressed concern that the practice would lead to wrongful executions. When the Court upheld Florida's override scheme in 1984, Justice Stevens dissented, stating, "It may well be that the jury was sufficiently convinced of petitioner's guilt to convict him, but nevertheless also sufficiently troubled by the possibility that an irrevocable mistake might be made . . . that [it] concluded

---

20. *Beck*, 447 U.S. at 637 ("[W]e have invalidated procedural rules that tended to diminish the reliability of the sentencing determination. The same reasoning must apply to rules that diminish the reliability of the guilt determination.").

21. 536 U.S. 304 (2002).

22. *Id.* at 321; *see also* Hall v. Florida, 134 S. Ct. 1986, 1993 (2014) (reiterating this point from *Atkins*); *Beck*, 447 U.S. at 637 (stating that a practice that enhances the risk of an unwarranted conviction in a death penalty case "cannot be tolerated").

23. *See Atkins*, 536 U.S. at 321.

24. *See* Lockhart v. McCree, 476 U.S. 162, 181 (1986) (stating that "residual doubt has been recognized as an extremely effective argument for defendants in capital cases") (quotations and citations omitted). The Court has declined to embrace residual doubt as a sentencing factor required by the Eighth Amendment, *see* Franklin v. Lynaugh, 487 U.S. 164, 172-76 (1988), but jurors tend to weigh residual doubt heavily regardless of whether they are instructed to consider it, *see, e.g.*, Christina S. Pignatelli, *Residual Doubt: It's a Life Saver*, 13 CAP. DEF. J. 307, 313 (2001).

that a sentence of death could not be morally justified in this case."[25] Three months later, Justice Marshall dissented from the denial of review in another override case and wrote, "The belief that [the death penalty] is inappropriate where there are doubts as to guilt, even if they do not rise to the level necessary for acquittal, is a feeling that stems from common sense and fundamental notions of justice."[26]

When Justices Stevens and Marshall wrote those opinions, they had little evidence to cite about the link between innocence and override. But their concerns have been validated over time, with studies highlighting the role of residual doubt for capital jurors, and with override cases proving more likely than others to produce death row exonerations. Three decades on, the reliability problems of override are more difficult to ignore.

*Patrick Mulvaney is the Managing Attorney for Capital Litigation at the Southern Center for Human Rights. Katherine Chamblee is a Staff Attorney at the Southern Center for Human Rights. Michael Fires, Kelsey Peregoy, and Britney Wilson, all former interns at the Southern Center for Human Rights, provided valuable research assistance.*

Preferred Citation: Patrick Mulvaney & Katherine Chamblee, *Innocence and Override*, 126 YALE L.J. F. 118 (2016), http://www.yalelawjournal.org/forum/innocence-and-override.

---

[25] Spaziano v. Florida, 468 U.S. 447, 488 n.34 (1984) (Stevens, J., dissenting), *overruled in part by* Hurst v. Florida, 136 S. Ct. 616 (2016).

[26] Heiney v. Florida, 469 U.S. 920, 921-22 (1984) (Marshall, J., dissenting from the denial of certiorari).